IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ROSFEL GARZA, #1181215 | § | |
| VS. | § | CIVIL ACTION NO. 6:20cv331 |
| LORIE DAVIS, ET AL. | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Rosfel Garza, an inmate confined in the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, *et seq*. He is suing former Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID) Director Lorie Davis, TDCJ-CID Coffield Unit Head Chaplain Allen Barker, Regional Islamic Chaplain Unknown Party, TDCJ-CID Director of Chaplaincy Timothy Jones, and TDCJ-CID Assistant Director of Chaplaincy Unknown Party in their official capacities. The complaint was referred for findings of fact, conclusions of law, and recommendations for the disposition of the lawsuit.

The present Report and Recommendation concerns Defendant Barker's motion for partial summary judgment limited to the exhaustion of administrative remedies (Dkt. #43). Plaintiff filed a response. (Dkt. #46).

Facts of the Case

Garza originally filed a lawsuit in Civil Action No. 6:20cv322, pursuant to 42 U.S.C. § 1983 and RLUIPA. His civil rights claims remained in No. 6:20cv322, and his RLUIPA claims were severed from his original lawsuit and opened in Civil Action No. 6:20cv331. (Dkt. #1). On February 10, 2021, Garza filed his Amended Complaint regarding his RLUIPA claims. (Dkt. #22). The Amended Complaint (Dkt. #22) is the live pleading in the action before the Court. An amended complaint supersedes and takes the place of a previous complaint filed in a case. *Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 740 (5th Cir. 1986).

Regarding his RLUIPA claims, Garza states that he is a Sufi and Hanafi Muslim. As such, he contends that he must avoid things that are haram or impure by Islamic law.

Claim #1—Regarding his RLUIPA water claim, Garza claims that as a Muslim he must bath or wash in clean water before prayer and J'umah in order to follow the tenets of his faith. (Dkt. #22 at 3). He alleges that there have been several instances in which the Coffield Unit's water system experienced a broken water line, or the power failed. During at least three of these instances—August 4, 2015, October 13, 2015, and November 1, 2016, the water was tested, and *coliform* bacteria was detected. TDCJ repaired the water lines and treated the water system with chlorine. Garza also objects to the use of the chlorine to treat the water too.[1] He asserts that the chlorine changes the odor of the water and thus makes it impure for the purposes of purifying himself for his prayers.

---

[1] Chlorine is recommended and commonly used to effectively kill bacteria in drinking water. https://www.cdc.gov/healthywater/drinking/public/water_disinfection.html, last visited December 19, 2022.

Garza asserts that on December 29, 2020, the power went out at the Coffield Unit, and he was instructed to not drink the water. He states that the inmates were given bottled water until the power returned. He does not allege that any bacteria was discovered in the water from that power outage.

Garza states that the Coffield Unit Wastewater Treatment Plant has been in use for thirty years. He contends that the treatment plant is made of concrete and that it will leak and contaminate the water. He further maintains that the Hog Barn "Secess {*sic*} Pool Pond" is off the back gate of the Michael Unit and has been there for twenty years. He speculates that the Michael Unit Hog Barn Secess Pool Pond is contaminating the Coffield Unit Wastewater Treatment Plant with urine and feces from the hog barns.

Within claims ##2–4 (Chow Hall, Serving Line, Cooks Floor)—Garza is also seeking the creation of a separate Halal kitchen at the Coffield Unit to prepare and serve Halal food by Muslim workers. (Dkt. #22 at 4). Garza complains that non-Muslim kitchen workers do not care and are careless about contaminating the pork-free food on the current serving line with pork contaminated items. He claims the pots and pans that are used to cook the Halal food should not be used for other cooking and that the trays, plates, utensils, drinkware, etc. should not come in contact with pork items and should be exclusively used for pork-free meals. He states that he frequently feels grease on various chow hall serving items and presumes that the grease is from pork items. Garza envisions a Halal kitchen that serves Halal food, with Muslim workers, with kitchen equipment and service ware that supports the Halal kitchen only.

Claim #5 (Sanctioned Islamic Imams)—Garza requests that TDCJ hire Mecca-sanctioned Imams as Muslim chaplains for its prison population who follow the Islamic faith and to ensure that all the Islamic changes are made to the Halal kitchen. (Dkt. #22 at 5).

Claim #6 (Slaughtered meats and chicken)—Garza is also requesting Halal meats that were slaughtered in accordance with the Hanafi tenets. (Dkt. #22 at 5). The Hanafi believe that the jugular vein of the animal must be cut, and the blood be allowed to drain from the body.

He is seeking prospective injunctive relief in the form of: (1) a water filter to remove the *coliform* bacteria from the drinking water, (2) a Halal kitchen where Muslims prepare and cook all food for Muslim inmates, and is cleaned by Islamic standards, and (3) that TDCJ hire only Mecca-sanctioned Imams as Muslim chaplains for TDCJ. (Dkt. #22 at 3).

### Defendant's Motion for Summary Judgment

Defendant Barker filed a motion for summary judgment limited to the issue of exhaustion of administrative remedies (Dkt. #43). In support of his motion, Barker submitted:

- Garza's grievance records from January 1, 2016, to September 21, 2021, with a business records affidavit. (Dkt. #43-1–#43-4).
- The relevant portions of the TDCJ Offender Orientation Handbook, eff. April 2016 (Dkt. #43-5.

Defendant Barker argues that Garza's religious water claim should be dismissed because Garza did not exhaust his administrative remedies to completion.

### Standard on Summary Judgment

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The moving party for summary judgment has the burden of proving the lack of a genuine dispute as to all the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Galindo v. Precision Am. Corp.,* 754 F.2d 1212, 1221-23 (5th Cir. 1985).

In deciding a motion for summary judgment, the Court must make a threshold inquiry in determining whether there is a need for a trial. "In other words, whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." 477 U.S. at 247-48.

If the movant satisfies its initial burden of demonstrating the absence of a material fact dispute, then the non-movant must identify specific evidence in the summary judgment record demonstrating that there is a material fact dispute concerning the essential elements of its case for which it will bear the burden of proof at trial. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996). The non-movant cannot survive a motion for summary judgment by resting on the allegations in his pleadings. *Isquith v. Middle South Util., Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988). Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant must present evidence sufficient to support a resolution of the factual disputes in his favor. *Anderson*, 477 U.S. at 257. The non-movant must submit competent summary judgment evidence sufficient to defeat a properly supported motion

for summary judgment. *See, e.g., Burleson v. Texas Dep't of Criminal Justice*, 393 F.3d 577, 589-90 (5th Cir. 2004).

Unserved and defaulting former officials are entitled to "benefit from the appearing defendant's favorable summary judgment motion." *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001); *see also Block v. Samuels*, No. H0-4-4861, 20006 WL2239016, at *9 (S.D. Tx. Aug. 6, 2006). Defendants Lorie Davis, Regional Islamic Chaplain Unknown Party, TDCJ-CID Director of Chaplaincy Timothy Jones, and TDCJ-CID Assistant Director of Chaplaincy Unknown Party are likewise entitled to have Garza's claims dismissed pursuant to Rule 56 for failure to exhaust.

## Discussion and Analysis

Defendant Barker filed a motion for summary judgment asserting that Plaintiff failed to exhaust his administrative remedies. (Dkt. #43). The law governing the exhaustion of administrative remedies is 42 U.S.C. § 1997e. In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), which mandated that no action shall be brought by a prisoner "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

### A. Exhaustion under the PLRA

In light of the enactment of the PLRA, the Supreme Court unanimously concluded that inmates must exhaust their administrative remedies before proceeding to federal court. *Booth v. Churner*, 532 U.S. 731 (2001). The Court subsequently held that the PLRA requires "proper exhaustion," meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).

The Court, moreover, reiterated that "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). It was added, however, that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints." *Id.* at 216.

Following *Jones*, the Fifth Circuit discussed how the exhaustion question should be handled in *Dillon v. Rogers*, 596 F.3d 260 (5th Cir. 2010). The following guidelines were provided:

> As a final matter, we now provide a brief summary of how district courts should approach exhaustion questions under the PLRA. When the defendant raises exhaustion as an affirmative defense, the judge should usually resolve disputes concerning exhaustion prior to allowing the case to proceed on the merits. If the plaintiff survives summary judgment on exhaustion, the judge may resolve disputed facts concerning exhaustion, holding an evidentiary hearing if necessary.

*Id.* at 272-73. More recently, the Fifth Circuit expressly stated that "district courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012) (per curiam).

Proper exhaustion is determined by reference to the state grievance procedures. *Jones*, 549 U.S. at 217-18; *Patterson v. Stanley*, 547 F. App'x 510, 511 (5th Cir. 2013). The Texas Department of Criminal Justice ("TDCJ") provides a two-step process for filing grievances, and a prisoner must pursue a grievance through both steps to satisfy the exhaustion requirement. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). A Step 1 grievance must be submitted within fifteen days of the alleged incident. *Id.* If an offender is dissatisfied with the outcome of the Step 1 response, he has fifteen days from the receipt of the Step 1 grievance to file a Step 2 appeal. Both steps of the grievance procedure must be completed for a grievance to be considered exhausted. *Id.* The Supreme Court has clearly specified that "[p]roper exhaustion demands compliance with

7

an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 90. The "primary purpose of a grievance is to alert prison officials to a problem. . ." *Johnson*, 385 F.3d at 522.

  B. <u>Plaintiff's Grievances</u>

In the four years preceding the filing of this suit, Garza filed numerous grievances. (*See* Dkt. #43-1 through #43-4). Many of Garza's grievances were rejected by TDCJ officials for not complying with grievance procedures. (*See* Dkt. 43-1 at 2-53, 135-136). Of Garza's processed grievances, he filed multiple complaints regarding religious accommodations as summarized below:

• Grievance No. 2016089567. Garza filed Step One and Step Two grievances, which were completed on or around March 4, 2016. Garza complains that he was not provided separate religious services for Sufi Muslims. (Dkt. #43-1 at 54-57).

• Grievance No. 2016120382. Garza filed only a Step One grievance, which was returned to him on or around April 7, 2016. Garza complains that he was not provided separate services for Sufi Muslims. (Dkt. #43-1 at 62-63).

• Grievance No. 2016134010. Garza filed Step One and Step Two grievances, which were completed on or around August 1, 2016. Garza complains that he was not allowed food or lay- in pass for Ramadan in 2016 and that there were no separate services for Sufi Muslims. (Dkt. #43-1 at 68-71).

• Grievance No. 2016156382. Garza filed Step One and Step Two grievances, which were completed on or around September 19, 2016. Garza complains that he was denied Ramadan accommodations as retaliation in 2016. (Dkt. #43-1 at 77-81).

• Grievance No. 2016158590. Garza filed Step One and Step Two grievances, which were completed on or around June 28, 2016. Garza complains that he was denied Ramadan meals in 2016. (Dkt. #43-1 at 82-85).

• Grievance No. 2016165370. Garza filed Step One and Step Two grievances, which were completed on or around August 25, 2016. Garza complains that he was denied food and lay-ins for Ramadan in 2016. (Dkt. #43-1 at 86-89).

• Grievance No. 2016193683. Garza filed only a Step One grievance, which was returned to him on around September 12, 2016. Garza complains that he was denied a religious beard. (Dkt. #43-2 at 97-98).

• Grievance No. 2017073957. Garza filed Step One and Step Two grievances, which were completed on or around February 7, 2017. Garza complains that he was denied articles of religious clothing. (Dkt. #43-2 at 127-130).

• **Grievance No. 201783518. Garza filed Step One and Step Two grievances, which were completed on or around March 7, 2017. Garza complains that TDCJ uses chaplains, rather than Imams, for services and requests that TDCJ hire Imams.** (Dkt. #43-2 at 131-134).

• Grievance No. 2017096019. Garza filed Step One and Step Two grievances, which were completed on or around April 18, 2017. Garza complains that he was not provided separate services for Sufi Muslims. (Dkt. #43-2 at 137-140).

• Grievance No. 2017131305. Garza filed Step One and Step Two grievances, which were completed on or around June 20, 2017. Garza complains that he was denied religious headwear. (Dkt. #43-2 at 146-149).

• Grievance No. 2017139907. Garza filed Step One and Step Two grievances, which were completed on or around June 6, 2017. Garza complains that he was not provided separate services for Sufi Muslims. (Dkt. 43-2 at 150-153).

• Grievance No. 2017147600. Garza filed Step One and Step Two grievances, which were completed on or around July 12, 2017. Garza complains that he was denied a lay-in for Ramadan on May 13, 2017. (Dkt. #43-2 at 154-157).

• Grievance No. 2017153246. Garza filed only a Step One grievance which was returned to him on or around June 30, 2017. Garza claims officials refused to allow him to go through meal service on time in order to follow his religious practices. (Dkt. #43-2 at 158-159).

• Grievance No. 2018000470. Garza filed Step One and Step Two grievances, which were completed on or around November 3, 2017. Garza complains that the was denied access to religious services for a religious holiday in 2017. (Dkt. #43-2 at 166-169).

• Grievance No. 2018136549. Garza filed Step One and Step Two grievances, which were completed on or around July 25, 2018. Garza claims he was denied religious headwear in violation of a settlement agreement. (Dkt. #43-3 at 3-6).

• **Grievance No. 2018031230. Garza filed Step One and Step Two grievances, which were completed on or around December 10, 2018. Garza complains that TDCJ uses chaplains for Islamic services and that the chaplains who supervise Islamic services are not authorized by Islam**. (Dkt. #43-3 at 11-14).

• **Grievance No. 2019073031. Garza filed Step One and Step Two grievances, which were completed on or around March 19, 2019. Garza complains that he is denied halal food and that his religious beliefs forbid him from consuming improperly slaughtered animals. (**Dkt. #43-3 at 25-28).

• Grievance No. 2019083231. Garza filed Step One and Step Two grievances, which were completed on or around April 24, 2019. Garza claims he was denied religious headwear in violation of a settlement agreement. (Dkt. #43-3 at 29-32).

• Grievance No. 2019124564. Garza filed Step One and Step Two grievances, which were completed on or around July 15, 2019. Garza complains that he was not allowed eat in timely manner during Ramadan. (Dkt. #43-3 at 38-41).

• Grievance No. 2019138637. Garza filed Step One and Step Two grievances, which were completed on or around Sept 3, 2019. Garza claims he was denied religious devotional items. (Dkt. #43-3 at 44-48).

• Grievance No. 2019172403. Garza filed Step One and Step Two grievances, which were completed on or around Oct. 23, 2019. Garza complains that he was prevented from practicing his religion by other inmates during religious services and was denied services for his Islamic sect. (Dkt. #43-3 at 61-64).

• Grievance No. 2020028336. Garza filed Step One and Step Two grievances, which were completed on or around December 19, 2019. Garza complains that he was not provided separate services for his Islamic sect. (Dkt. #43-3 at 26-68).

• Grievance No. 2020060813. Garza filed Step One and Step Two grievances, which were completed on or around March 7, 2020. Garza complains that Grievance No. 2020028336 was not processed in a timely manner and that he was denied religious services. (Dkt. 43-3 at 69-73).

• Grievance No. 2020106271. Garza filed Step One and Step Two grievances, which were completed on or around June 1, 2020. Garza complains that he was denied the ability to celebrate Ramadan in 2020. (Dkt. #43-3 at 84-87).

• Grievance No. 2020120111. Garza filed Step One and Step Two grievances, which were completed on or around June 8, 2020. Garza complains he was denied the ability to celebrate Ramadan in 2020. (Dkt. #43-3 at 88-91).

Garza's other grievances relate to conditions of his confinement, that do not involve his religious accommodations, [Dkt. #43-1 at 58-61, 64-67, 93-96, 99-112, 160-165, 170-177, Dkt. #43-2 at 7-10, 15-19, 42-43, 49-60, 74-83] or his medical needs [Dkt. 43-1 at 72-76, 90-92, 113-126, 141-145, 178-181, Dkt. #43-2 at 20-24, 33-37, Dkt. #43-4 at 1-3]. Of these grievances, two grievances relate to the quality of water at the Coffield Unit:

• Grievance No. 2019064959. Garza filed Step One and Step Two grievances, which were completed on or around March 28, 2019. Garza complains that the Coffield Unit medical department has refused to refer him to a dermatologist for complaints of sore and infected skin. In the grievance, Garza attributes his maladies to contaminated water. (Dkt. #43-3 at 20-24).

- Grievance No. 2019054955. Garza filed Step One and Step Two grievances, which were completed on or around April 8, 2019. Garza contends that on December 20, 2018, inmates at the Coffield Unit complained to security staff that the water at the unit was contaminated. Garza claims that the water contains the *H. Pylori* virus and can cause illnesses, including skin-infections and sores, to inmates at the unit. (Dkt. #43-3 at 15-19).

Garza's grievances reflect that he did not exhaust the cleanliness of the Coffield Unit water or water supply as it relates to his religious practices as an Islamic practitioner. In response to Defendant Barker's summary judgment motion, Garza responds that he filed Grievance No. 2019054955, (Dkt. #43-3 at 15-18), in which he requests clean water. (Dkt. #46 at 2). Reviewing the Step One and Step Two grievance for Grievance No. 2019054955, Garza is concerned regarding the placement of waters coolers in the P-4 dormitory housing area. He raises a concern about the cleanliness of the water at the Coffield Unit in both his Step One and Step Two. Garza, however, does not raise any concern regarding the violation of his religious beliefs pertaining to the drinking water or that he is unable to purify himself for the purposes of his prayers.

Garza fails to put prison officials on notice that he is concerned about how the cleanliness of the drinking water at the Coffield Unit substantially burdens his practice of his religion. *Johnson*, 385 F.3d at 516-17 (holding that a grievance should provide sufficient detail to give prison officials a fair opportunity to address the problem that will likely later form the basis of the lawsuit). Garza's Grievance No. 2019054955 does not put prison officials on notice regarding his religious concerns. To the extent that he is raising an independent claim regarding the use of chlorine to treat the drinking water at Coffield Unit, Garza has failed to exhaust his administrative remedies as to that claim.

Garza next argues that exhausting his complaints to completion are futile because other inmates have filed lawsuits regarding the cleanliness of the water at the Coffield Unit and nothing

11

has changed. There are no "futility or other [judicially created] exceptions [to the] statutory exhaustion requirements." *Valentine v. Collier*, 956 F.3d 797, 804 (5th Cir. 2020), citing *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). So long as the State's administrative procedure grants "authority to take *some* action in response to a complaint," that procedure is considered "available," even if it cannot provide "the remedial action an inmate demands." *Booth*, 532 U.S. at 736; *see also id.* at 739 ("Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible."). TDCJ's grievance procedure is "available," and Garza is required to exhaust.

The Supreme Court held in *Woodford,* 548 U.S. 81, that the exhaustion remedy contained in the PLRA mandates "proper exhaustion," which means compliance with prison procedural rules and deadlines. *Id.* at 92–93. A grievance must be pursued through both steps of the TDCJ system before it can be considered exhausted. *See Johnson,* 385 F.3d at 515.

Prisoners, moreover, are required to exhaust claims through the prison's grievance system *before* filing suit in court. *Jones*, 549 U.S. at 203; G*onzalez*, 702 F.3d at 788. In *Gonzalez*, a prisoner completed the two-step grievance process, but only after he filed his 42 U.S.C. § 1983 complaint. *Id.*, 702 F.3d at 787. The Fifth Circuit held: "Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Id.* at 788. District courts have no discretion to excuse a prisoner's failure to properly exhaust the grievance procedure before the filing of the complaint; pre-filing exhaustion is mandatory. *Id.*

Taking the evidence in the light most favorable to Garza, he failed to exhaust to completion any grievance regarding his claim for clean water to purify himself before his prays and J'umah. Consequently, Garza's clean water complaint must be dismissed for failure to exhaust his

administrative remedies. In reviewing his grievances as it pertains to the remainder of his RLUIPA claims, Garza's Grievance No. 2018031230 reflects that he properly filed a Step One and Step Two asserting that TDCJ should provide an Imam that is sanctioned by Mecca as a Muslim chaplain. That claim is properly exhausted and should be permitted to proceed.

Pertaining to Grievance No. 2019073031, in the Step One grievance, Garza asserts that he is being denied Halal food, that Halal meat should be properly slaughtered according to religious tenets, and he requests a Halal kitchen similar to that of the Jewish kitchen and specialized food preparation. (Dkt. #43-3 at 27-28). In his Step Two of that same grievance, Garza asserts that he is being denied Halal food and access to consumable livestock slaughtered consistent with his religious tenets. Garza does not mention or discuss access to a Halal kitchen or specialized food preparation similar to that of the Jewish kitchen.

Based on Grievance No. 2019073031, Garza has exhausted his claim for Halal food, and if Halal meat is to be served, he has exhausted his claim for the animal to be slaughtered according to his religious tenets. He has not exhausted any claim for a Halal kitchen and specialized preparation, including Muslim workers to work a Halal food service line. As explained, exhaustion as contained in the PLRA mandates "proper exhaustion," which means compliance with prison procedural rules and deadlines. *Woodford*, 548 U.S. at 92–93. A grievance must be pursued through both steps of the TDCJ system before it can be considered exhausted. *See Johnson*, 385 F.3d at 515. Garza failed to meet the exhaustion requirement for his Halal kitchen and specialized preparation claim in Grievance No. 2019073031.

Recommendation

It is therefore recommended that Defendant Barker's motion for partial summary judgment limited to exhaustion (Dkt. #43) be granted. It is further recommended that Garza's religious water claims and Halal kitchen claims (Claims ##1–4) be dismissed without prejudice for failure to exhaust administrative remedies. Moreover, the granting of partial summary judgment in favor of Defendant Barker regarding Garza's religious water claims and Halal kitchen claims should be extended to the unserved Defendants—including Lorie Davis, Regional Islamic Chaplain Unknown Party, TDCJ-CID Director of Chaplaincy Timothy Jones, and TDCJ-CID Assistant Director of Chaplaincy Unknown Party. Finally, Garza's claims regarding Mecca-sanctioned Imams and Halal meats slaughtered in accordance with his religious tenets should proceed.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 21st day of December, 2022.

14

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE